Hazel J. THORNE, Rocky R. Compton, and Dusty S. Thorne, Plaintiffs-Appellants,

v.

The BOARD OF COUNTY COMMISSION-ERS OF the COUNTY OF FREMONT, and Cyprus Mines Corporation/Wyoming Mineral Corporation, Defendants-Appellees.

No. 80SA510.

Supreme Court of Colorado, En Banc.

Dec. 21, 1981.

Geddes, MacDougall, Geddes & Paxton, P.C., M. C. MacDougall, Brian N. Geddes, Colorado Springs, for plaintiffs-appellants.

Frederickson, Johnson & McDermott, P.C., Thomas N. Kiehnhoff, Canon City, for defendants-appellees Board of County Commissioners, Sherman & Howard, Theodore E. Worcester, Martha E. Rudolph, Denver, for defendants-appellees Cyprus Mines Corp.

LOHR, Justice.

The plaintiffs brought a C.R.C.P. 106(a)(4) action in the Fremont County District Court, seeking review of proceedings resulting in the issuance of two special use permits by the Board of County Commissioners of the County of Fremont (Board of County Commissioners) to Cyprus Mines Corporation and Wyoming Mineral Corporation (together, Cyprus).[1] The complaint

1. The trial court treated Cyprus Mines Corporation and Wyoming Mineral Corporation as a single interest in its findings of fact and judg-

named the Board of County Commissioners and Cyprus as defendants, but did not join other owners of mineral or surface estates located within the area covered by the special use permits. The Board of County Commissioners moved to dismiss the complaint for failure to join indispensable parties, claiming that the action could not proceed in the absence of these other landowners.[2] See C.R.C.P. 19. After a hearing, the motion to dismiss was granted, and this appeal followed. Because we conclude that the trial court erred in finding that the plaintiffs failed to join all indispensable parties, we reverse the judgment of that court and remand this matter for further proceedings.

This case stems from the efforts of Cyprus to obtain authorization to engage in uranium mining and milling operations in Fremont County, Colorado. The lands of interest to Cyprus were zoned agricultural, and the proposed mining and milling operations were not permitted uses in such a zone. Consequently, it was necessary to obtain special use permits, and Cyprus duly submitted two applications for permits. The first application states that Cyprus wishes to engage in uranium mining on described land consisting of 6,176 acres. The second application, covering adjoining land, states that the proposed use is uranium milling and that the size of the property is 2,400 acres. Each application describes the owners of the land as "Cyprus Mines/Wyoming Mineral Corp."

Public hearings were held before the Fremont County Planning Commission and the Board of County Commissioners, and on May 20, 1980, the special use permits were granted. They provide that Cyprus shall not sell, assign, or encumber its permits without prior approval of the Board of County Commissioners. The permit allowing uranium mining operations further provides that those operations shall be conducted in compliance with one of two alternate plans submitted by Cyprus. The permit authorizing the milling operation similarly requires that the mill shall be located in accordance with a site plan to be submitted by Cyprus.

The plaintiffs, Hazel J. Thorne, Dusty S. Thorne, and Rocky R. Compton (collectively, the Thornes), who own a ranch adjacent to the proposed mining and milling sites, then brought their district court action. In that action they named Cyprus and the Board of County Commissioners as defendants. However, they did not join other owners of fee interests in the land covered by the special use permits, even though, as established by the findings of the trial court, they were aware of the identity of those owners.

The Board of County Commissioners then filed its motion to dismiss for failure to join specified indispensable parties. At the subsequent hearing on the motion, attention focused on G. Robert Boyer, R. Dale Boyer, David Koons, and the State of Colorado Board of Land Commissioners as possible indispensable parties.[3]

The Board of County Commissioners argued that the Cyprus permits created valuable rights in these landowners and that such interests could not be impaired in their absence. The trial court agreed, finding that approval of the permits conferred a benefit on the owners of the surface and mineral estates in the permit areas because "the permitted activity allows them to derive an economic and legal benefit from the more complete use of their land."

ment, and the parties have not objected to this approach.

2. The other defendants initially filed an answer addressing the merits of the plaintiffs' claims. They later joined in the motion of the Board of County Commissioners to dismiss the complaint for failure to join indispensable parties.

3. Surface ownership maps submitted by the parties reflect that the Boyer property consists of two separate strips, one located in the vicinity of the mines and the other located near the mill. The Koons property is near the mill. The State of Colorado land is in proximity to the mines. At the hearing on the motion to dismiss, the Thornes contended that out of the total permit area of about 8,000 acres, these parties owned approximately 800 acres.

The Thornes then brought this appeal, asserting various grounds for relief. Because we conclude that the trial court erred in finding that the Boyers, Koons, and State of Colorado were indispensable parties, we limit our inquiry to that issue.

The general principles that inform our analysis of this case are well established. Unless another period is prescribed by applicable statute, a proceeding under C.R.C.P. 106(a)(4) to review the acts of any inferior tribunal must be filed not later than thirty days after final action is taken by that tribunal. C.R.C.P. 106(b). In the instant case there is no statute specifying a different period for review, so the thirty day time limit is controlling. Moreover, a proceeding pursuant to C.R.C.P. 106(a)(4) must be "perfected" as well as filed within this time. *E.g., Westlund v. Carter*, 193 Colo. 129, 565 P.2d 920 (1977); *Board of County Commissioners v. Carter*, 193 Colo. 225, 564 P.2d 421 (1977); *Civil Service Commission v. District Court*, 186 Colo. 308, 527 P.2d 531 (1974). Perfection includes the joinder of all parties who are determined to be indispensable under C.R.C.P. 19.[4] *Id.; accord, Norby v. City of Boulder*, 195 Colo. 231, 577 P.2d 277 (1978); *Hidden Lake Development Co. v. District Court*, 183 Colo. 168, 515 P.2d 632 (1973); *Hennigh v. Board of County Commissioners*, 168 Colo. 128, 450 P.2d 73 (1969).

■ The tribunal whose acts are to be reviewed is an indispensable party to the subsequent 106(a)(4) action. *E.g., City and County of Denver v. District Court*, 189 Colo. 342, 540 P.2d 1088 (1975); *Dahman v. City of Lakewood*, Colo.App., 610 P.2d 1357 (1980). In proceedings to review an administrative decision granting a rezoning, zoning variance, or special use permit, the applicant must also be joined within the thirty-day time limit. *E.g., Norby v. City of Boulder, supra; Hidden Lake Development Co. v. District Court, supra; Hennigh v. Board of County Commissioners, supra.*

■ Although the cited cases establish the applicable principles, we have never before had occasion to apply them to the precise issue presented here. That issue is whether all the owners of property interests in land contained within the boundaries of a special use permit must be joined in a C.R.C.P. 106(a)(4) action for review of the decision to issue the permit. We conclude that the grant of the special use permits to Cyprus has not created a particularized benefit in other owners of land contained within the boundaries of the permit areas, and that the approach of the court below would impose an unjustified burden upon the Thornes. Therefore, we hold that such landowners are not indispensable parties.

Our reasoning begins with a recognition of the limited nature of the special use permits at issue. In contrast to a rezoning of this area to allow mining and milling operations by any landowners, the permits in this case authorize only Cyprus to conduct such activities. Further, those permits provide that the rights of Cyprus cannot be sold, assigned or encumbered without approval of the Board of County Commissioners. Finally, the permits do not authorize mining and milling activities in general, but restrict the operations to the specific proposals submitted or to be submitted by Cyprus.[5] Under the proposals upon which the

---

4. The law in this area has been changed by amendment of C.R.C.P. 106, effective July 1, 1981. C.R.C.P. 106(b) now provides, in relevant part:

> A timely petition or writ may be amended at any time with leave of the court, for good cause shown, to add, dismiss or substitute parties and such amendment shall relate back to the date of filing of the original petition or writ.

As a result, the failure to join indispensable parties within the 30 day time limit established by C.R.C.P. 106(b) need no longer result in dismissal.

5. We do not reach the question of whether all landowners are indispensable parties to an action challenging a rezoning determination. Our earlier cases suggest that in that context the status of landowner may make an individual an indispensable party to such a review proceeding, *Westlund v. Carter, supra; see also, Board of County Commissioners v. Carter, supra.* However, those cases need not be read that broadly since in each case the landowner found indispensable to the review proceeding had

permits are based, neither the mines nor the mill will be located on land owned by the Boyers, Koons, or the State of Colorado.

The respondents nevertheless contend that these facts should not make a legal difference. They first argue that the owners not joined may derive an economic benefit from Cyprus' mining and milling operations, and that termination of that prospective benefit in the absence of those parties is impermissible.[6] No contention is made that any of the allegedly indispensable parties will derive royalties or other direct benefits based upon Cyprus' mining or milling activities on its own lands, the only location authorized for these operations under the permits. Moreover, any indirect economic benefit does not sufficiently distinguish these landowners from those members of the surrounding community who also will derive an indirect economic advantage from the increased activity and employment that would result from Cyprus' proposed operations. The special benefits, if any, that accrue to the absent parties

arise from contractual relationships with Cyprus rather than the special use determinations of the Board of County Commissioners.

The respondents then contend that the landowners are also benefited by a determination that their property is a proper location for mining and milling of minerals. However, as stated above, the permits are restricted to the specific operations proposed by Cyprus and do not reflect a land-use decision of general application and effect. The orebodies to be mined have been specifically identified and are on Cyprus' own lands. Moreover, this argument also fails to distinguish sufficiently between the interests of those landowners included within the special use permits and those adjacent to the permit areas. To the extent that those within the permit areas benefit from the precedential value of Cyprus' success, those adjacent to these areas would derive a substantially similar benefit.[7] The dispositive point is that, in contrast to Cyprus, neither group has obtained the

also been the applicant requesting the rezoning. In any event, the considerations in the present case are distinguishable. While the present permits authorize only Cyprus to engage in mining and milling activity, a rezoning determination affects the land rather than a specific individual and thus creates a direct rather than indirect effect upon the landowners.

6. The supposed benefit to the Boyers and the State of Colorado arises from mineral leases allegedly existing between these parties and Cyprus. It is contended that the permits make mining activities on these lands more probable, although the ownership maps reflect that the presently proposed mining sites lie on land owned rather than leased by Cyprus. The alleged benefit to Koons is more difficult to discern. There is no alleged mineral lease as to his property. Additionally, the Koons land is located wholly within the milling permit rather than the mining permit. The respondents state that the Koons property is presently under purchase agreement with Cyprus and, until this transaction is consummated, it is apparently this proposed sale that is relied upon to create a nexus between the Cyprus permits and a benefit to Koons.

7. Before the planning commission, and again before the Board of County Commissioners, Cyprus emphasized the lack of significance, in its view, of the exact location of the permit

boundaries. Thus, at the May 20, 1980, hearing before the Board of County Commissioners, R. A. McDaniel, Administrative Manager of Cyprus, stated:

[I]n the Planning Commission meeting, great concern came up about these dotted lines on our map, which we arbitrarily refer to as the boundary. We wish we didn't have to use that word, because it is somewhat meaningless. The purpose, however, and the reason we use the word "boundary" is so that we can communicate with the various regulators, and when we talk about the Hansen Project they can relate to something closer than Fremont County.

So the purpose of those lines is not to say that we're going to be doing some kind of operation on every square foot within the so-called boundary, or that we necessarily own everything within that boundary, it simply means that it's the general area of the project.

We were very liberal, in fact, in drawing that line, because it made it possible, then, to make sure that without doubt we notified all the area people that needed notice and information about the project and its related activities. So as the day wears on, if the questions refer to the boundary, that's what we have in mind, not that it has a stockade wall or a fence or whatever.

present right to undertake any activities other than those allowed by the existing agricultural zoning classification.

Nor are the absent parties distinguished by reason of past participation in the application procedure or the hearing resulting in the Board of County Commissioners' approval of the special use permits.[8] Thus, the present case bears little similarity to *Norby v. City of Boulder, supra,* on which the respondents rely. There, we held that the plaintiffs in a Rule 106(a)(4) proceeding should have joined the applicant for the special review use or, if that was not possible, those parties *named in the application* as "persons in interest;" *i.e.,* apparently persons having some legal relationship to the applicant and thus, indirectly, having an interest in the application itself.

■ The question therefore becomes whether the status of the absent parties as landowners within the permit areas is sufficient in itself to justify their characterization as indispensable. C.R.C.P. 19(b) sets out the factors relevant to the determination of indispensability. As relevant here, these include:

> [T]o what extent a judgment rendered in the person's absence might be prejudicial to him ... [and] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

As discussed above, the interests of the absent landowners are indirect and speculative. While they are arguably persons to be joined if feasible, C.R.C.P. 19(a), their interests are not sufficient to overcome the countervailing consideration that if they are deemed indispensable the Thornes will be left without a remedy. The special use permits did not create a property interest in these allegedly indispensable parties, and a mere interest in the subject matter of the litigation, even though substantial, is not sufficient in itself to warrant a determination of indispensability. *See Woodco v. Lindahl,* 152 Colo. 49, 380 P.2d 234 (1963). Moreover, to require the party who objects to a special use permit to join every landowner within the permit area within thirty days of permit issuance or forfeit a decision on the merits of his claim would impose a significant procedural burden.[9] Recognizing that the determination of indispensability turns upon the facts of each case, *Civil Service Commission v. District Court,* 185 Colo. 179, 522 P.2d 1231 (1974), we decline to impose that burden in this dispute absent the presence of more significant countervailing benefits.

Our holding on this question does not suggest, however, that it would be improper or undesirable to join these landowners. Such parties may well be persons subject to joinder under C.R.C.P. 20 or persons to be joined if feasible under C.R.C.P. 19(a). Further, if they determine that it is in their interest to participate in the C.R.C.P. 106(a)(4) review, such parties may move for intervention pursuant to C.R.C.P. 24. We hold only that such persons are not indispensable parties, and that dismissal of the action was consequently improper.

We therefore reverse the judgment of the district court and remand this cause to that court for reinstatement of the complaint.

■

---

8. The Thornes state in their brief that Koons did object to issuance of the permit at the Fremont County Planning Commission hearing, but that he did not participate after that time. The respondents do not contest this statement, and there is no indication that any of the other absent parties participated in any manner or at any time in the contest over these permits.

9. The respondents imply that, at a minimum, the party objecting to a special use determination should be required to join those landowners of whom he has knowledge. While such a requirement would be less burdensome, we cannot discern a principled reason for drawing the line at this point. If the landowners have a sufficient interest to warrant a determination of the indispensability, ignorance of the objecting party does not provide a persuasive reason for allowing that interest to be impaired in the absence of those owners.